**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
_____
QING YOU LI,

                Plaintiff,                                **JURY TRIAL DEMANDED**

v.

CITY OF NEW YORK; COMMISSIONER WILLIAM        ECF Case
BRATTON, New York City Police Deparment ("NYPD");
CAPTAIN THOMAS CONFORTI, NYPD 109th Precinct;
LIEUTENANT OH (First Name Unknown), NYPD 109th
Precinct; SERGEANT GINA FABRIZIO, NYPD 109th
Precinct; PUBLIC RELATIONS OFFICER MOONDY
SOO-HOO, NYPD 109th Precinct; DETECTIVE YAM (First
Name Unknown), NYPD 109th Precinct; POLICE OFFICER
BRIAN PORZELT, NPYD 109th Precinct; POLICE OFFICER
BRITTANY WALDON, NYPD 109th Precinct; POLICE
OFFICERS "JOHN DOE" and "JANE DOE,"
NYPD 109th Precinct, being fictitious names, the true names
not known at this time; LISA RIVERA; JOSEPH CRUZ;
PATRICIA RIVERA; and KEYVAN LONDEN,

                Defendants.
_____

## VERIFIED COMPLAINT

Plaintiff Qing You LI ("Mr. Li") through undersigned counsel, upon information and belief, alleges as follows:

### INTRODUCTION

1.   This is a civil rights action brought by Mr. Li for relief owing to him and arising from Defendants' tortious acts and violations of Mr. Li's constitutional and statutory rights. In particular, Mr. Li was wrongfully arrested for assault on or around December 14, 2014.  The arrest, as well as the searches and seizures contemporaneous to the arrest, was done without probable cause. Mr. Li has been greatly damaged by the failure of Defendants to act in accordance with their duties under the law.

2.   Among other acts, Defendants Conforti, Fabrizio, Porzelt, Waldon, Soo-Hoo, Oh, Yam,  and

John Doe Officers (collectively, NYPD 109th Precinct Defendants) arrested Mr. Li without probable cause in violation of, *inter alia*, the Fourth Amendment of the US Constitution.  The NYPD 109th Precinct defendants also discriminated against Mr. Li based on his national origin, age, and disability by arresting Mr. Li and refusing to file a complaint against people who attacked him in violation of, *inter alia*, the First and Fourteenth amendment of the United States, various federal statutes, and their New York State equivalents.  The NYPD 109th Precinct Defendants also deprived Mr. Li of his right to petition the government for redress of grievances under the US and New York Constitutions by failing to provide him with a translator.

3.   Among other acts, Defendants City and Bratton employed, directed, hired, trained, and supervised the NYPD 109th Precinct Defendants, and have put in place policies, procedures and customs that violated Mr. Li's rights, and/or allowed such violations to occur.

4.   Among other acts, Defendants LISA RIVERA ("Daughter Rivera"), Cruz,  PATRICIA RIVERA ("Mother Rivera"), and Londen (collectively, "Non-City Defendants") assaulted Mr. Li and wrongfully had Mr. Li arrested by the NYPD 109th Precinct Defendants without probable cause in violation of, *inter alia*, the Fourth Amendment of the US Constitution.

5.   Mr. Li seeks compensatory and punitive damages, an award of attorneys' fees and costs, and such other relief as this Court deems equitable and just.

### JURISDICTION AND VENUE

6.    The U.S. District Court has jurisdiction over this action under 28 U.S.C. § 1331. The claims in this action arise out of 42 U.S.C. § 1983 and the Constitution of the United States.

7.   This Court also has supplemental jurisdiction over the state constitutional and state law claims under 28 U.S.C. § 1367.

8.   Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions

giving rise to the claim occurred in this Court's jurisdictional area.

## PARTIES

9.   QING YOU LI, the Plaintiff herein ("Mr. Li"), is an individual residing in the County of Queens, City of Flushing, State of New York.

10. CITY OF NEW YORK,  ("City") Defendant herein, is a municipal corporation duly incorporated and existing pursuant to the laws of the State of New York. The City of New York has established and maintains the New York City Police Department ("NYPD") as a constituent department or agency in the area of law enforcement. At all relevant times herein described, Defendant hired, employed, supervised and controlled Defendant Bratton and the NYPD 109th Precinct Defendants.

11. COMMISSIONER  WILLIAM  BRATTON  ("Defendant Bratton"), defendant herein, is the Commissioner of the NYPD, and he is sued herein in his individual and official capacity.   At all relevant times herein described, Defendant Bratton was an employee of the State of New York and was acting within the scope of employment in regard to the acts alleged herein. At all relevant times herein described, Defendant Bratton  is and was responsible for, and the chief architect of, the policies, practices and/or customs of the NYPD, a municipal agency of the City of New York. Defendant Bratton is and was, at all times relevant herein, responsible for the hiring, screening, training, retention, supervision, discipline, counseling and control of the police officers under his command who are or were employed by the NYPD.

12. CAPTAIN THOMAS CONFORTI ("Defendant Conforti"), defendant herein, is the Commanding Officer of the NYPD's 109th Precinct, and he is sued herein in his individual and official capacity. At all relevant times herein described, Defendant Conforti was an employee of the State of New York and was acting within the scope of employment in regard to the acts alleged herein. Defendant Conforti is and was, at all times relevant herein, responsible for the hiring, screening, training, retention, supervi-

sion, discipline, counseling and control of the police officers under his command who are or were employed by the NYPD 109th Precinct.

13. LIEUTENANT OH (First Name Unknown) ("Defendant Oh"), defendant herein, is a Lieutenant with the NYPD's 109th Precinct, and he is sued herein in his individual and official capacity. At all relevant times herein described, Defendant Oh was an employee of the State of New York and was acting within the scope of employment in regard to the acts alleged herein.

14. SERGEANT GINA FABRIZIO ("Defendant Fabrizio"), defendant herein, is a Sergeant with the NYPD's 109th Precinct, and she is sued herein in her individual and official capacity. At all relevant times herein described, Defendant Fabrizio was an employee of the State of New York and was acting within the scope of employment in regard to the acts alleged herein.

15. PUBLIC RELATIONS OFFICER MOONDY SOO-HOO ("Defendant Soo-Hoo"), defendant herein, is a Public Relations Officer with the NYPD's 109th Precinct, and she is sued herein in her individual and official capacity. At all relevant times herein described, Defendant Soo-Hoo was an employee of the State of New York and was acting within the scope of employment in regard to the acts alleged herein.

16. DETECTIVE YAM (First Name Unknown) ("Defendant Yam"), defendant herein, is a Detective with the NYPD's 109th Precinct, and he is sued herein in his individual and official capacity. At all relevant times herein described, Defendant Yam was an employee of the State of New York and was acting within the scope of employment in regard to the acts alleged herein.

17. POLICE OFFICER BRIAN PORZELT ("Defendant Porzelt"), defendant herein, is a Police Officer with the NYPD's 109th Precinct, and he is sued herein in his individual and official capacity. At all relevant times herein described, Defendant Porzelt was an employee of the State of New York and was acting within the scope of employment in regard to the acts alleged herein.

18. POLICE OFFICER BRITTANY WALDON ("Defendant Waldon"), Defendant herein, is a Po-

4

lice Officer with the NYPD's 109th Precinct, and she is sued herein in his individual and official capacity. At all relevant times herein described, Defendant Waldon was an employee of the State of New York and was acting within the scope of employment in regard to the acts alleged herein.

19. POLICE OFFICERS "JOHN DOE" and "JANE DOE," NYPD 109th Precinct, being fictitious names, the true names not known at this time ("John Doe Officers"), Defendants herein, are Police Officers with the NYPD's 109th Precinct, and they are sued herein in their individual and official capacities. These Defendants are identified by fictitious names because Mr. Li is currently unaware of the names and identities of all the NYPD 109th Precinct Officers who present at or were otherwise involved in his unlawful arrest as set forth below. At all relevant times herein described, John Doe Officers were employees of the State of New York and were acting within the scope of their employment in regard to the acts alleged herein.

20. LISA RIVERA ("Daughter Rivera"), defendant herein, is an individual residing in the County of Queens, City of Fresh Meadows, State of New York.

21. PATRICIA RIVERA ("Mother Rivera"), defendant herein, is an individual residing in the County of Queens, City of Fresh Meadows, State of New York. Upon information and belief, Mother Rivera is the Parent of Daughter Rivera.

22. JOSEPH CRUZ ("Defendant Cruz"), defendant herein, is an individual residing in the County of County of Kings, City of Brooklyn, State of New York. Upon information and belief, Defendant Cruz was and is the boyfriend of Daughter Rivera.

23. KEYVAN LONDEN ("Defendant Londen"), defendant herein, is an individual residing in the County of Queens, City of Flushing, State of New York. Upon information and belief, Defendant Londen is either friends with or related to Daughter Rivera, Mother Rivera, or Defendant Cruz.

## FACTS

24. Mr. Li is a 65-year old male of Chinese descent who resides in Flushing, Queens.

25. Mr. Li suffers from glaucoma, which has rendered him legally blind. Mr. Li has no vision out of his left eye, and only extremely limited vision out of his right eye.

26. Mr. Li is not a native English speaker; he primarily speaks and writes Mandarin.

27. On December 14, 2014, at around 7:00 PM, Mr. Li was walking around his neighborhood as part of his normal exercise routine.

28. During this walk, Mr. Li encountered Daughter Rivera and Defendant Cruz ("collectively, Rivera and Cruz"), each of whom was walking a dog on a leash, on the corner of Leavitt Street and 137th Street in Flushing ("the scene").

29. Due to his poor eyesight, Mr. Li accidentally walked into the leash of one of the dogs handled by Rivera and Cruz.

30. Mr. Li attempted to apologize to Rivera and Cruz, but was limited by the fact that he is not a native English Speaker.

31. Defendant Cruz violently exploded, yelling "fuck you" and other expletives at Mr. Li.

32. Mr. Li tried to explain to Rivera and Cruz in broken English that he had accidentally run into them because of his eyesight, and took his eye medication from his pocket to show Rivera and Cruz.

33. Without warning or provocation, Defendant Cruz punched Mr. Li in the face, knocking off Mr. Li's glasses and causing severe and visible bruising to his face.

34. Mr. Li began to fall, and instinctively grabbed Defendant Cruz's shirt with his left hand to steady himself.

35. When he did this, Daughter Rivera bit Mr. Li's left hand hard enough to tear a chunk of Mr. Li's skin off and cause bleeding. The bite would leave a permanent scar on Mr. Li's left hand.

36. Mr. Li let go of Defendant Cruz and attempted to fend off his attackers by waiving his arms.

37. This was to no avail, as Rivera and Cruz continued to punch and kick Mr. Li in his head and body.

38. Mr. Li fell to his knees under the weight of this attack, and suffered visible cuts and scrapes on his knees as a result.

39. Rivera and Cruz continued to punch and kick Mr. Li after he fell to the ground, causing further bruising, contusions, scrapes, and cuts on his arms and body.

40. Mother Rivera witnessed this attack by Rivera and Cruz.

41. In response to this attack by Rivera and Cruz, Mother Rivera called 911 and falsely told the operator that Mr. Li attacked Daughter Rivera.

42. Rivera and Cruz continued to punch and kick Mr. Li even after Mother Rivera called the police, leading to further bruising, contusions, scrapes, and cuts on his arms and body.

43. A few minutes after Mother Rivera's phone call, Defendants Porzelt and Waldon arrived on the scene.

44. By the time Defendants Porzelt and Waldon arrived at the scene, Mr. Li was visibly injured after the brutal attack by Rivera and Cruz: he had two black eyes, his left hand was bleeding from where Daughter Rivera bit him, and he had numerous cuts and bruises all over his body, arms, and legs.

45. Defendant Porzelt approached Mr. Li, who then tried to explain in broken English what had happened to him.

46. Upon information and belief, because of Mr. Li limited English, Defendant Porzelt did not understand what Mr. Li was saying.

47. Despite not understanding Mr. Li, Defendant Porzelt did not request a translator to speak with Mr. Li.

48. Upon his arrival, Defendant Porzelt searched Mr. Li's person and clothing without Mr. Li's consent.

49. Following this search by Defendant Porzelt, Mr. Li used his cellular phone to call his brother-in-law, Michael O' Shea ("Mr. O'Shea"), to seek help speaking with Defendants Porzelt and Waldon.

50. After seeing Mr. Li make this phone call, Defendant Porzelt seized Mr. Li's cellular phone.

51. Shortly after, Defendant Fabrizio and at several other John Doe Officers—the precise number is unknown to Mr. Li at this time—arrived at the scene.

52. The Defendants Porzelt, Walden, Fabrizio and John Doe Officers ("the NYPD Officers at the scene") then spoke with Mother Rivera, Daughter Rivera, Defendant Cruz, and Defendant Londen (collectively, "the Non-City Defendants"), all of whom are native English speakers.

53. The Non-City Defendants falsely told the NYPD Officers at the scene that Mr. Li had attacked Daughter Rivera.

54. The NYPD Officers at the scene made no further attempts to speak with Mr. Li, and ignored all his attempts to speak with them.

55. None of the NYPD Officers at the scene called for an interpreter to help communicate with Mr. Li.

56. None of the NYPD Officers at the scene asked Mr. Li whether he wanted to press charges against Rivera and Cruz.

57. Mr. O'Shea arrived to the scene a few minutes later.

58. Shortly thereafter, an ambulance arrived. Mr. O'Shea, who speaks English and Mandarin (Mr. Li's native tongue), assisted Mr. Li in explaining his injuries to the Emergency Medical Technicians (EMTS) who arrived.

59. The EMTs performed basic treatment Mr. Li's injuries at the scene, but were prevented by NYPD officers at the scene from taking Mr. Li to the hospital for further evaluation.

60. While he was being treated, Mr. Li and Mr. O'Shea again tried to speak to the NYPD Officers at the scene, and file a complaint against Rivera and Cruzz.

61. All of the NYPD Officers at the scene ignored Mr. Li's attempts to communicate with them through Mr. O'Shea, and refused to take a complaint against Rivera and Cruz.

62. In fact, Defendant Fabrizio cut off Mr. Li and Mr. O'Shea, and said that she did not want to hear anything from Mr. Li.

63. Defendant Fabrizio then ordered Defendant Porzelt to handcuff Mr. Li and place him under arrest.

64. Defendant Porzelt handcuffed Mr. Li's arms behind his back, which caused Mr. Li significant pain, given that he had just been attacked by Rivera and Cruz.

65. None of the NYPD Officers at the scene called for an interpreter to explain to Mr. Li why he was being arrested.

66. The NYPD Officers at the scene told Mr. O'Shea to stop talking and prevented him from translating for Mr. Li while he was being arrested.

67. None of the NYPD Officers at the scene asked Mr. Li if he needed to go to the hospital, despite his obvious advanced age and numerous visible injuries.

68. None of the NYPD Officers at the scene called for a translator to ask Mr. Li if he needed to go to the Hospital.

69. The NYPD Officers at the scene placed Mr. Li into a police car and transported him to the 109th Precinct.

70. Rivera and Cruz remained on the scene, and were not arrested by any of the NYPD Officers at the scene.

71. After Mr. Li was brought to the 109th Precinct, John Doe Officers again searched Mr. Li without his permission.

72. John Doe Officers at the 109th precinct then took Mr. Li's wallet, money, and keys without his permission.

73. John Doe Officers at the 109th precinct also took Mr. Li's fingerprints

74. John Doe Officers at the 109th precinct also took Photographs of Mr. Li.

75. John Doe Officers at the 109th precinct then placed Mr. Li in a holding cell.

76. Mr. Li remained in a holding cell for over two hours.

77. John Doe officers at the 109th Precinct did not provide Mr. Li with a translator at any time while he was in the 109th Precinct.

78. At the conclusion of his arrest processing, John Doe Officers at the 109th Precinct issued Mr. Li a desk appearance ticket which ordered him to appear in Queens Criminal Court on January 9, 2015.

79. The NYPD 109th Precinct Defendants did not file a criminal complaint against Rivera and Cruz on December 14, 2015, nor did they take Mr. Chen's statement as to what happened.

80. On December 15, 2016, Mr. Li visited his primary medical doctor, who treated Mr. Li's wounds and gave him a tetanus shot.

81. On December 15, 2016, Mr. Li also visited New York Hospital Queens, where he received further evaluation and treatment for his injuries.

82. On the morning of December 16, 2014, Mr. Li, accompanied by a translator, went to the 109th Precinct to file an assault complaint against Rivera and Cruz.

83. After Mr. Li arrived at the 109th Precinct, a John Doe Officer told Mr. Li that he would need to speak with Defendant Porzelt directly, and that Defendant Porzelt would be there at 3 pm.

84. In the afternoon on December 16, 2014, Mr. Li, again accompanied by a translator, returned to the 109th Precinct to file a complaint against Rivera and Cruz.

85. After Mr. Li arrived at the 109th Precinct for a second time, a different John Doe Officer told Mr. Li that Defendant Porzelt was not working that day.

86. Mr. Li, through his translator, explained to the John Doe Officer that he wanted to file a complaint against Rivera and Cruz.

87. The John Doe Officer told Mr. Li that that the 109th Precinct would not file a complaint against Rivera and Cruz.

88. Mr. Li spoke then with several other John Doe officers at the 109th Precinct, and through his translator, asked them to file a complaint against Rivera and Cruz.

89. Each of the John Doe Officers at the 109th Precinct Mr. Li spoke to on December 16, 2014 refused to file a complaint against Rivera and Cruz.

90. After being rejected by the NYPD 109th Precinct Defendants, Mr. Li reached out to his local elected representatives and the news media, and told them about how he had been mistreated by the NYPD 109th Precinct Defendants.

91. As a result of this negative media coverage and negative responses from local elected representatives, Defendant Conforti invited Mr. Li back to the 109th precinct, ostensibly so that Mr. Li could file a complaint against Rivera and Cruz.

92. On December 20, 2014, Mr. Li, accompanied by a translator, went to the 109th Precinct to file a complaint against Rivera and Cruz.

93. After Mr. Li arrived at the 109th Precinct,  PAA Sparacio (first name unknown) ("PAA Sparacio") took down Mr. Li's complaint, and noted Mr. Li's numerous visible injuries.

94. PAA Sparacio stated that Mr. Li's complaint should have been taken at the scene of the incident, and that it was improper for the NYPD Officers at the scene not to do so.

95. PAA Sparacio told Mr. Li that he would link Mr. Li's complaint to the complaint filed by Rivera and Cruz against him, and that they would be treated as cross-complaints.

96. After Mr. Li filed his complaint, Defendant Soo-Hoo approached him and invited him to attend a meeting with Defendant Conforti to discuss Mr. Li's case.

97. On December 22, 2014, Mr. Li, accompanied by Mr. O'Shea, attended a meeting with Defendants Conforti, Oh, and Soo-Hoo at the 109th Precinct to discuss his case ("the December 22, 2014 meet-

ing").

98. Defendant Oh translated for Mr. Li during the December 22, 2014 meeting.

99. During the December 22, 2014 meeting, Mr. Li told described how he had been attacked by Rivera and Cruz on December 14, 2014 to Defendants Conforti, Oh, and Soo-Hoo.

100.     During the December 22, 2014 meeting, Mr. Li and Mr. O'Shea also told Defendants Conforti, Oh, and Soo-Hoo that the NYPD Officers at the scene refused to take Mr. Li's complaint against Rivera and Cruz.

101.     During the December 22, 2014 meeting, Mr. Li and Mr. O'Shea also told Defendants Conforti, Oh, and Soo-Hoo that the NYPD Officers at the scene refused provide Mr. Li with a translator.

102.     During the December 22, 2014 meeting, Mr. Li and Mr. O'Shea also told Defendants Conforti, Oh, and Soo-Hoo that the NYPD Officers at the scene refused to let Mr. O'Shea translate for Mr. Li.

103.     During the December 22, 2014 meeting, Defendant Conforti stated that that Mr. Li's complaint against Rivera and Cruz should have been taken at the scene.

104.     During the December 22, 2014 meeting, Defendant Conforti also stated that Mr. Li should have been provided with a translator at the scene.

105.     During the December 22, 2014 meeting, Defendant Conforti told Mr. Li that officers at the 109th Precinct had processed Mr. Li's complaint, and that it would be linked with Rivera and Cruz's complaint against Mr. Li.

106.     During the December 22, 2014 meeting, Defendant Conforti told Mr. Li that Defendant Yam was assigned to Mr. Li's case, and that Defendant Yam would be investigating Mr. Li's case.

107.     During the December 22, 2014 meeting, Defendant Conforti told Mr. Li that Defendant Yam would be following up with Mr. Li in order to get more information so he could arrest Rivera and Cruz.

108.      At the conclusion of the December 22, 2014 Meeting, Defendant Conforti told Mr. Li and Mr. O'Shea that the 109th Precinct would be conducting an internal investigation to address the improper handling of the case.

109.      Mr. Li's cross complaint was eventually assigned to Defendant Yam.

110.      However, Defendant Yam never spoke with Mr. Li, and took no steps to either arrest or even investigate Rivera and Cruz.

111.      As such, it is clear that the 109th Precinct never had any intention of investigating Mr. Li's complaint against Rivera and Cruz.

112.      To this date, none of the NYPD 109th Precinct Defendants have taken any steps to prosecute Rivera and Cruz for their attack on Mr. Li.

113.      Upon information and belief, the NYPD 109th Precinct Defendants have taken no internal steps to investigate or discipline their officers for the events of December 14, 2014.

114.      On January 9, 2015, Mr. Li was arraigned at Queens County Criminal Court on a misdemeanor complaint arising from his December 14, 2014 arrest.

115.      On June 22, 2015, the criminal case against Mr. Li arising out of his December 14, 2014 arrest was adjourned in contemplation of dismissal, with a three-month sealing date.

116.      On or around September 22, 2015, the criminal case against Mr. Li arising out of his December 14, 2014 arrest was dismissed and sealed.

## **EXHAUSTION OF REMEDIES**

117.      As to the state law claims, on January 23, 2015, Mr. Li filed a Notice of Claim with the City of New York, alleging various constitutional violations by the New York City Police Department. This claim was timely filed, within ninety (90) days from when the claims arose.

118.      As to Mr. Li's 42 U.S.C. § 1983 claims, exhaustion of administrative remedies is not a

prerequisite to filing a § 1983 action.

119.     Mr. Li's remaining federal statutory causes of action either do not require exhaustion of administrative remedies, or resort to such remedies would otherwise be futile under the circumstances described above.

120.     As for Mr. Li's claims against the Non-City Defendants, there is no requirement that Mr. Li exhaust administrative remedies before bringing those claims.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF
### 42 U.S.C. § 1983 Claim for False Arrest and False Imprisonment

121.     Mr. Li incorporates by reference the allegations set forth in Paragraphs 1 through 120 as if fully set forth herein.

122.     As set forth above, the NYPD 109th Precinct Defendants intentionally arrested or caused to be arrested Mr. Li on December 14, 2014.

123.     Mr. Li was aware of his arrest and did not consent to the arrest.

124.     The NYPD 109th Precinct Defendants' arrest of Mr. Li was not privileged by probable cause.

125.     The NYPD 109th Precinct Defendants arrested and continued to detain Mr. Li with reckless disregard for the facts.

126.     The NYPD 109th Precinct Defendants' actions caused Mr. Li to be detained for two hours.

127.     The NYPD 109th Precinct Defendants were acting under the color of the statutes, ordinances, regulations, customs and/or usage of New York Law when they wrongfully arrested and detained Mr. Li.

128.     As a direct and proximate result of the NYPD 109th Precinct Defendants' actions, Mr. Li

was deprived of his Fourth and Fourteenth Amendment rights under the US Constitution to be free from unlawful detention.

129.     As a direct and proximate result of NYPD 109th Precinct Defendants' actions, Mr. Li sustained damages (including monetary damages; physical, mental and emotional pain and suffering; mental anguish, embarrassment and humiliation) in an amount to be determined at trial.

130.     The NYPD 109th Precinct Defendants' actions were intentional, wanton, malicious, reckless and oppressive, entitling Mr. Li to an award of punitive damages.

## SECOND CLAIM FOR RELIEF
### 42 U.S.C. § 1983 Claim for Unreasonable Search and Seizure

131.     Mr. Li incorporates by reference the allegations set forth in Paragraphs 1 through 130 as if fully set forth herein.

132.     As set forth above, the NYPD 109th Precinct Defendants intentionally searched Mr. Li's person, and items of personal property.

133.     The NYPD 109th Precinct Defendants' search of Mr. Li's person and items of personal property was unreasonable as prohibited by the United States Constitution in that it done without first obtaining a warrant, was not incident to a lawful arrest, and was not otherwise privileged by extenuating circumstances.

134.     Mr. Li was aware of and did not consent to the searches of his person and items of personal property.

135.     As set forth above the NYPD 109th Precinct Defendants intentionally seized a piece of Mr. Li's personal property, namely his cell phone, wallet, money, and keys.

136.     Mr. Li was aware of and did not consent to the NYPD 109th Precinct Defendants' seizure of his cell phone, wallet, money, and keys.

137.     The NYPD 109th Precinct Defendants' seizure of Mr. Li's phone was unreasonable as

prohibited by the United States Constitution in that it done without first obtaining a warrant, was not incident to a lawful arrest, and was not otherwise privileged by extenuating circumstances.

138.     The NYPD 109th Precinct Defendants' searches of Mr. Li's person and property were not privileged by probable cause.

139.     The NYPD 109th Precinct Defendants' seizure of Mr. Li's phone was not privileged by probable cause.

140.     The NYPD 109th Precinct Defendants searched Mr. Li's person, property and vehicle with reckless disregard for the facts.

141.     The NYPD 109th Precinct Defendants were acting under the color of the statutes, ordinances, regulations, customs and/or usage of New York Law when they searched Mr. Li's person and items of personal property, and when they seized his phone.

142.     As a direct and proximate result of the Defendants' actions, Mr. Li was deprived of his Fourth and Fourteenth Amendment rights under the US Constitution to be free from unreasonable searches and seizures.

143.     As a direct and proximate result of the Defendants' actions, Mr. Li sustained damages (including monetary damages; physical, mental and emotional pain and suffering; mental anguish, embarrassment and humiliation) in an amount to be determined at trial.

144.     The Defendants' actions were intentional, wanton, malicious, reckless and oppressive, entitling Mr. Li to an award of punitive damages.


### THIRD CLAIM FOR RELIEF
### New York State Law Claim for False Arrest and False Imprisonment

145.     Mr. Li incorporates by reference the allegations set forth in Paragraphs 1 through 144 as if fully set forth herein.

146.     The NYPD 109th Precinct Defendants intentionally arrested or caused to be arrested Mr. Li

on December 14, 2014.

147.     Mr. Li was aware of and did not consent to the arrest.

148.     The NYPD 109th Precinct Defendants' arrest of Mr. Li was not privileged by probable cause.

149.     The NYPD 109th Precinct Defendants arrested and continued to detain Mr. Li with reckless disregard for the facts.

150.     The NYPD 109th Precinct Defendants' actions caused Mr. Li to be detained for two hours.

151.     As a direct and proximate result of the NYPD 109th Precinct Defendants' actions, Mr. Li sustained damages (including monetary damages; physical, mental and emotional pain and suffering; mental anguish, embarrassment and humiliation) in an amount to be determined at trial.

152.     The NYPD 109th Precinct Defendants' actions were intentional, wanton, malicious, reckless and oppressive, entitling Mr. Li to an award of punitive damages.


## FOURTH CLAIM FOR RELIEF
### 42 U.S.C. 1983 Claim for Deliberate Indifference to Medical Needs Under the Eighth Amendment of the United States Constitution

153.     Mr. Li incorporates by reference the allegations set forth in Paragraphs 1 through 152 as if fully set forth herein.

154.     As set forth above, at the time of Mr. Li's arrest, he was visibly injured after having been beaten by Rivera and Cruz.  These obvious and serious physical injuries included bruising to the face, bruising and cuts on his body and arms.

155.     As set forth above, at the time of Mr. Li's arrest, he was a 64 year-old man with chronic vision problems, which he attempted to explain to the NYPD 109th Precinct Defendants to no avail because his pleas were ignored and Mr. Li was not provided a translator.

156.     As a result of the beating he sustained, Mr. Li's vision deteriorated even further, and he suf-

fered significant discomfort and pain.

157.    Despite Mr. Li's clearly advanced age and obvious physical injuries, the NYPD 109th Precinct Defendants immediately placed Mr. Li under arrest, and did not allow him to be taken to a hospital.

158.    Instead, NYPD 109th Precinct Defendants took him to the 109th Precinct, and held him there for over two hours.

159.    As such, the NYPD 109th Precinct Defendants clearly demonstrated deliberate indifference to Mr. Li's obvious and serious medical needs.

160.    The NYPD 109th Precinct Defendants were acting under the color of the statutes, ordinances, regulations, customs and/or usage of New York Law when they were deliberately indifferent to Mr. Li's serious obvious and serious medical needs.

161.    As a direct and proximate result of the NYPD 109th Precinct Defendants' actions, Mr. Li was deprived of his rights under the Eighth Amendment of the US Constitution to be free of an unnecessary and wanton infliction of pain while in NYPD custody.

162.    As a direct and proximate result of the NYPD 109th Precinct Defendants' actions, Mr. Li sustained damages (including monetary damages; physical, mental and emotional pain and suffering; mental anguish, embarrassment and humiliation) in an amount to be determined at trial.

163.    The NYPD 109th Precinct Defendants' actions were intentional, wanton, malicious, reckless and oppressive, entitling Mr. Li to an award of punitive damages.

## FIFTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 Claim For Deprivation of Right to Petition Government Under First Amendment of the United States Constitution

164.    Mr. Li incorporates by reference the allegations set forth in Paragraphs 1 through 163 as if fully set forth herein.

165.    On July 22, 2008, Mayor Bloomberg issued Executive Order 120 ("EO 120"), "Citywide Policy on Language Access to Ensure the Effective Delivery of City Services," which requires each City

agency that provides direct public services, including the NYPD, to "ensure meaningful access to such ser-vices by taking reasonable steps to develop and implement agency-specific language assistance plans regarding LEP persons." The Order further requires that each city agency designate a Language Access Coordinator, develop an appropriate language access policy and implementation plan, and provide language services based on at least the top six languages spoken by the population of the City.

166.    In April 2009, the NYPD published its Language Access Plan (the "Plan"). The Plan requires NYPD officers responding to LEP individuals to provide interpretation services as necessary either via the Operations Unit, using NYPD employees to interpret, or through the use of a contracted interpreter via Language Line (a telephonic interpreting company). The Plan states that NYPD's policy is to "take reasonable steps to provide timely and meaningful access for LEP persons to the services and benefits that the Department provides to the degree practicable." The Plan further requires that "[w]hen performing law enforcement functions, members provide free language assistance to LEP individuals whom they encounter when necessary or whenever an LEP person requests language assistance services."

167.    The United States Department of Justice ("DOJ") subsequently reviewed the Plan as implemented by the NYPD and found that the NYPD failed to comply with federal law, including Title VI of the Civil Rights Act of 1964 and the Safe Streets Act. The DOJ's compliance review consisted of an in-depth administrative analysis of the NYPD's policies and procedures with respect to LEP individuals. On November 8, 2010, the DOJ issued a 43-page report, addressed to Defendant Raymond Kelly, outlining various problem areas and shortcomings in the Plan and its implementation (the "Compliance Review"). On June 14, 2012, the NYPD released a revised Plan (the "Revised Plan").

168.    As set forth above, despite its adoption of alleged language access policies, and despite being notified by the DOJ of deficiencies in its policies, the NYPD 109th Precinct Defendants, along with Defendants City and Bratton (collectively, "the City Defendants"), through their policy,

custom or practice of denying language services to limited English proficient individuals, prevented Mr. Li from filing a complaint and report to the NYPD, and otherwise prevented him from communicating with police officers from whom he sought assistance.

169.     As set forth above, the NYPD 109th Precinct Defendants failed to provide Mr. Li with an interpreter during his arrest despite his obvious inability to speak English.

170.     As set forth above, the NYPD 109th Precinct Defendants refused to take Mr. Li's cross complaint against his attackers, despite numerous attempts on his part.

171.     When a complaint was eventually taken, the NYPD 109th Precinct Defendants took no steps whatsoever to proceed on the complaint against Rivera and Cruz.

172.     The City Defendants were acting under the color of the statutes, ordinances, regulations, customs and/or usage of New York Law when they when they failed to provide him with an interpreter and when they refused to take a complaint against his attackers.

173.     As a direct and proximate result of the City Defendants' actions, Mr. Li was deprived of his rights under the First Amendment of the US Constitution to petition the government for redress of grievances.

174.     As a direct and proximate result of the City Defendants' actions, Mr. Li sustained damages (including monetary damages; physical, mental and emotional pain and suffering; mental anguish, embarrassment and humiliation) in an amount to be determined at trial.

175.     The City Defendants' actions acts were intentional, wanton, malicious, reckless and oppressive, entitling Mr. Li to an award of punitive damages.


## SIXTH CLAIM FOR RELIEF
### Deprivation of Right to Petition Government for Redress of Grievances under Article I Section 9 of the New York State Constitution

176.     Mr. Li incorporates by reference the allegations set forth in Paragraphs 1 through 175 as

20

if fully set forth herein.

177.     The City Defendants, through their policy, custom or practice of denying language ser-vices to limited English proficient individuals, prevented Mr. Li from filing a complaint and report to the NYPD, and otherwise prevented him from communicating with police officers from whom he sought assistance.

178.     As set forth above, the NYPD 109th Precinct Defendants failed to provide Mr. Li with an interpreter during his arrest despite his obvious inability to speak English.

179.     As set forth above, the NYPD 109th Precinct Defendants refused to take Mr. Li's cross com-plaint against his attackers, despite numerous attempts on his part.

180.     When a complaint was eventually taken, the NYPD 109th Precinct Defendants took no steps whatsoever to proceed on that complaint.

181.     As a direct and proximate result of the City Defendants' actions, Mr. Li was deprived of his rights under Article I Section 9 of the New York State Constitution to petition the government for redress of grievances.

182.     As a direct and proximate result of the City Defendants' actions, Mr. Li sustained damag-es (including monetary damages; physical, mental and emotional pain and suffering; mental anguish, embarrassment and humiliation) in an amount to be determined at trial.

183.     The City Defendants' acts were intentional, wanton, malicious, reckless and oppressive, entitling Mr. Li to an award of punitive damages.


### SEVENTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 Claim for Discrimination under the Equal Protection
### Clause of the US Constitution

184.     Mr. Li incorporates by reference the allegations set forth in Paragraphs 1 through 183 as if fully set forth herein.

185.     As set forth above, the City Defendants denied Mr. Li equal access to the services and protections of the NYPD based on his national origin by failing to provide Mr. with an interpreter and refusing to take a complaint against his attackers.

186.     As a direct and proximate result of the City Defendants' actions, Mr. Li was deprived of his right to the equal treatment under the law under the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

187.     The City Defendants were acting under the color of the statutes, ordinances, regulations, customs and/or usage of New York Law when they when they failed to provide him with an interpreter and when they refused to take a complaint against his attackers.

188.     As a direct and proximate result of City Defendants' acts, Mr. Li sustained damages (including monetary damages; physical, mental and emotional pain and suffering; mental anguish, embarrassment and humiliation) in an amount to be determined at trial.

189.     The City Defendants' acts were intentional, wanton, malicious, reckless and oppressive, entitling Mr. Li to an award of punitive damages.

## EIGHTH CLAIM FOR RELIEF
### Discrimination under the Equal Protection Clause of the New York State Constitution

190.     Mr. Li incorporates by reference the allegations set forth in Paragraphs 1 through 189 as if fully set forth herein.

191.     As set forth above, the City Defendants denied Mr. Li equal access to the services and protections of the NYPD based on his national origin by failing to provide Mr. with an interpreter and refusing to take a complaint against his attackers.

192.     As a direct and proximate result of the City Defendants' actions, Mr. Li was deprived of his right to the equal treatment under the law under the Equal Protection of the New York State Consti-

tution.

193.     As a direct and proximate result of the City Defendants' actions, Mr. Li sustained damages (including monetary damages; physical, mental and emotional pain and suffering; mental anguish, embarrassment and humiliation) in an amount to be determined at trial.

194.     The City Defendants' acts were intentional, wanton, malicious, reckless and oppressive, entitling Mr. Li to an award of punitive damages.


**NINTH CLAIM FOR RELIEF**
**Intentional Discrimination under Title VI of the Civil Rights Act of 1964,**
**42 U.S.C. § 2000(d) *et seq.***

195.     Mr. Li incorporates by reference the allegations set forth in Paragraphs 1 through 194 as if fully set forth herein.

196.     The NYPD is a municipal agency that receives federal financial aid.

197.     Discrimination based on race and national origin, is prohibited by recipients of federal financial assistance under 42 U.S.C. § 2000(d), et seq.

198.     As set forth above, the City Defendants, through their policy, custom or practice, intentionally discriminated against Mr. Li based on his national origin and LEP in violation of Title VI of the Civil Rights Act and its implementing regulations by failing to provide Mr. with an interpreter and refusing to take a complaint against Rivera and Cruz.

199.     As a direct and proximate result of the City Defendants' actions, Mr. Li has suffered injuries and damages and has been deprived of his rights under the civil rights laws.

200.     As a direct and proximate result of the City Defendants' actions, Mr. Li sustained damages (including monetary damages; physical, mental and emotional pain and suffering; mental anguish, embarrassment and humiliation) in an amount to be determined at trial.

201.     The City Defendants' acts were intentional, wanton, malicious, reckless and oppressive,

entitling Mr. Li to an award of punitive damages.

## TENTH CLAIM FOR RELIEF
### Violation of the Age Discrimination Act of 1975

202.     Mr. Li incorporates by reference the allegations set forth in Paragraphs 1 through 201 as if fully set forth herein.

203.      The Age Discrimination Act of 1975, 42 U.S.C. § 6101, and its implementing regulations state that no person in the United States shall, on the basis of age, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under, any program or activity receiving Federal financial assistance.

204.     The NYPD is a municipal agency that receives Federal financial Assistance.

205.     As set forth above, the NYPD 109th Precinct Defendants, through their policy, custom or practice, intentionally discriminated against Mr. Li based on his age in violation of the Age Discrimination Act and its implementing regulations by refusing to take a complaint against Rivera and Cruz.

206.     As a direct and proximate result of the NYPD 109th Precinct Defendants' actions, Mr. Li sustained damages (including monetary damages; physical, mental and emotional pain and suffering; mental anguish, embarrassment and humiliation) in an amount to be determined at trial.

207.     The NYPD 109th Precinct Defendants' acts were intentional, wanton, malicious, reckless and oppressive, entitling Mr. Li to an award of punitive damages.

## ELEVENTH CLAIM FOR RELIEF
### Violation of the American with Disabilities Act

208.     Mr. Li incorporates by reference the allegations set forth in Paragraphs 1 through 207 as if fully set forth herein.

209.      The Americans with Disabilities Act, 42 U.S.C. § 12101, and its implementing regulations state that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

210.      The NYPD is a public entity that and is subject to the requirements of the Americans with Disabilities Act.

211.      As set forth above, the NYPD 109th Precinct Defendants intentionally denied Mr. Li the benefits and the services of the NYPD based on his disability of legal blindness by refusing to take his complaint against Rivera and Cruz.

212.      As a direct and proximate result of the NYPD 109th Precinct Defendants' actions, Mr. Li sustained damages (including monetary damages; physical, mental and emotional pain and suffering; mental anguish, embarrassment and humiliation) in an amount to be determined at trial.

213.      The NYPD 109th Precinct Defendants' acts were intentional, wanton, malicious, reckless and oppressive, entitling Mr. Li to an award of punitive damages.


## TWELFTH CLAIM FOR RELIEF
### 42 U.S.C. § 1983 Municipal Liability Claim for Negligent Training, Hiring, Supervision and Retention

214.      Mr. Li incorporates by reference the allegations set forth in Paragraphs 1 through 213 as if fully set forth herein.

215.      Defendants City, Bratton, and Conforti, knew or reasonably should have known to a moral certainty that the officers within their supervision and control will confront, *inter alia*, investigative and custodial arrests, communication with witnesses and arrestees who do not speak English, and the requirements of probable cause to arrest and to prosecute.

216.     Defendants City, Bratton,  and Conforti have devised, implemented, enforced, adopted, sanctioned and ratified policies, practices and customs as to, *inter alia*, investigative and custodial arrests, communication with witnesses and arrestees who do not speak English, and the requirements of probable cause to arrest and to prosecute.

217.     The crime scene confronted by the NYPD 109th Precinct Defendants presented them with difficult choices of the sort that training and supervision would have made less difficult, and the wrong choices, the sort of which the Defendants made in this case, will frequently cause the deprivation of one's constitutional rights.

218.     As set forth above, the New York City Police Department has a history of mishandling the arrests and treatment of arrestees and detainees who do not speak English.

219.     Defendants City, Bratton, and Conforti failed to properly train officers within their supervision and control as to the requirements of probable cause to arrest and to prosecute, in a manner that preserves rights protected by the Constitution.

220.     With deliberate indifference to Mr. Li's constitutional rights, Defendants City, Bratton, and Conforti have directly and proximately caused Mr. Li's deprivation of rights under the US Constitution and the Laws of the United States by devising, implementing, enforcing, adopting, sanctioning and ratifying a policy, practice and/or custom of (a) failing to properly screen, train, and supervise NYPD officers; (b) failing to adequately monitor and discipline the NYPD and its officers; and (c) encouraging, sanctioning and failing to rectify the NYPD's constitutional abuses.

221.     Defendants City, Bratton, and Conforti's actions, directly and proximately caused their subordinate NYPD 109th Precinct Defendants to, *inter alia*, falsely arrest Mr. Li and subject him to unreasonable searches and seizures.

222.     As a direct and proximate result of Defendants City, Bratton, and Conforti's actions, Mr. Li was deprived of his First, Fourth, Eighth, and Fourteenth Amendment rights under the US Constitu-

tion.

223.     As a direct and proximate result of Defendants City, Bratton, and Conforti's actions, Mr. Li has sustained damages (including monetary damages; physical, mental and emotional pain and suffering; mental anguish, embarrassment and humiliation) in an amount to be determined at trial.

224.     Defendants City, Bratton, and Conforti's acts were intentional, wanton, malicious, reckless and oppressive, entitling Mr. Li to an award of punitive damages.

## THIRTEENTH CLAIM FOR RELIEF
### *Respondeat Superior* Claim Against the City Under New York Common Law

225.     Mr. Li incorporates by reference the allegations set forth in Paragraphs 1 through 224 as if fully set forth herein.

226.     The NYPD 109th Precinct Defendants are employees of Defendants City and Bratton.

227.     The wrongful and tortious acts of the NYPD 109th Precinct Defendants  as described in the proceeding paragraphs occurred while they were on duty, in and during the course and scope of their duties and functions as NYPD Officers, and while they were acting as agents and employees of Defendants City and Bratton.

228.     As a result, Defendants City and Bratton are liable to Mr. Li for the tortious conduct of their agents under the doctrine of *respondeat superior*.

## FOURTEENTH CLAIM FOR RELIEF
### New York Common Law Claim for Assault

229.     Mr. Li incorporates by reference the allegations set forth in Paragraphs 1 through 228 as if fully set forth herein.

230.     As set forth above, Rivera and Cruz intentionally placed Mr. Li in imminent apprehension of harmful contact by verbally and physically attacking Mr. Li.

231.     As a direct and proximate result of Rivera and Cruz's actions, Mr. Li has sustained damages (including monetary damages; physical, mental and emotional pain and suffering; mental anguish, embarrassment and humiliation) in an amount to be determined at trial.

232.     Rivera and Cruz's acts were intentional, wanton, malicious, reckless and oppressive, entitling Mr. Li to an award of punitive damages.

## FIFTEENTH CLAIM FOR RELIEF
### New York Common Law Claim for Battery

233.     Mr. Li incorporates by reference the allegations set forth in Paragraphs 1 through 232 as if fully set forth herein.

234.     As set forth above, Rivera and Cruz intentionally made offensive bodily contact with Mr. Li by physically attacking him.

235.     Mr. Li did not consent to be contacted by Rivera and Cruz.

236.     As a direct and proximate result of Rivera and Cruz's actions, Mr. Li has sustained damages (including monetary damages; physical, mental and emotional pain and suffering; mental anguish, embarrassment and humiliation) in an amount to be determined at trial.

237.     Rivera and Cruz's acts were intentional, wanton, malicious, reckless and oppressive, entitling Mr. Li to an award of punitive damages.

## SIXTEENTH CLAIM FOR RELIEF
### New York Common Law Claim for Abuse of Process

238.     Mr. Li incorporates by reference the allegations set forth in Paragraphs 1 through 237 as if fully set forth herein.

239.     As set forth above, the Non-City Defendants intentionally caused process to be issued against Mr. Li by filing a criminal complaint against Mr. Li and causing criminal charges to be brought

against him for an alleged assault of Daughter Rivera.

240.     The Non-City Defendants filed the aforementioned criminal complaint with the intent to harm Mr. Li, and without excuse of justification, because Mr. Li did not assault or otherwise harm Daughter Rivera.

241.     The Non-City Defendants used the aforementioned criminal complaint in a perverted matter to cover up that Rivera and Cruz had attacked Mr. Li on December 14, 2014.

242.     As a direct and proximate result of the Non-City Defendants' actions, Mr. Li has sustained damages (including monetary damages; physical, mental and emotional pain and suffering; mental anguish, embarrassment and humiliation) in an amount to be determined at trial, which includes, but is not limited to, the costs of hiring an attorney to defend him from baseless criminal charges.

243.     The Non-City Defendants' acts were intentional, wanton, malicious, reckless and oppressive, entitling Mr. Li to an award of punitive damages.


**WHEREFORE**, Plaintiff respectfully requests a Final Judgment:

a.   Awarding Mr. Li compensatory damages in amounts that are fair, just and reasonable, to be determined at trial.

b.   Awarding Mr. Li punitive damages and such other and further relief as this Court deems just, proper and equitable.

c.   Awarding Mr. Li reasonable attorneys' fees pursuant to 42 U.S.C. § 1988.

d.   Awarding Mr. Li costs of suit pursuant to 42 U.S.C. §§ 1920 and 1988; and

e.   Awarding Mr. Li such other and further relief as this Court may deem appropriate and equitable, including injunctive and declaratory relief as may be required in the interests of justice.

Dated:  January 13, 2016
       Flushing, New York

Respectfully submitted,
WANG LAW OFFICE, PLLC
*Attorneys for the Plaintiff*

By: _____
Chunyu Jean Wang, Esq.
36-25 Main Street, 3rd Floor
Flushing, NY 11354
T: (718) 353-9264
F: (718) 353-2099

## VERIFICATION

STATE OF NEW YORK )
                            ) ss:
COUNTY OF QUEENS )

I, Qing You Li, declare:

1. I do not speak, read or write English fluently. I do fluently speak, read and write Chinese. This verification has been translated for me from Chinese by the below translator.

2. I have personal knowledge of the above facts and am competent to testify regarding all such facts based upon my personal knowledge.

3. I am the plaintiff in the above action.

4. The foregoing complaint is true and correct, except as to matters stated on information and/or belief and as to those, I believe them to be true.

I declare under penalty of perjury under the laws of the State of New York that the foregoing is true.

_____
Qing You Li

Sworn to before me this 13th day of January 20 16

_____
Notary Public, State of New York

CHUNYU JEAN WANG
Notary Public, State of New York
Queens County, REG# 02WA6144171
My Commission Expires April 24, 20

===

### Certificate of Translation

I, Jiawen Yan, am competent to translate from Chinese into English, and certify that the translation is true and accurate to the best of my abilities.

_____
Jiawen Yan
36-25 Main Street, 3rd Floor
Flushing, NY 11354