UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------X
QING YOU LI,

           Plaintiff,

    - against-

CITY OF NEW YORK, *et al.*,

           Defendants.
--------------------------------------------------------------------X

FILED
IN CLERK'S OFFICE
US DISTRICT COURT E.D.N.Y.

★ NOV 2 8 2018 ★

BROOKLYN OFFICE

**MEMORANDUM DECISION
AND ORDER**
16-CV-174 (AMD) (RER)

**ANN M. DONNELLY, United States District Judge:**

On January 13, 2016, the plaintiff brought this action against the City of New York,

officers from the NYPD's 109th Precinct, and Lisa Rivera, Joseph Cruz, Patricia Rivera and

Keyvan Londen, alleging federal and state civil rights violations, as well as New York common

law claims for assault, battery, and abuse of process. (Complaint ¶¶ 1-5, 9-23, ECF No. 1.) On

October 9, 2018, defendants City of New York, Sergeant Frabizio, and Officers Brittany Waldon

and Brian Porzelt moved for summary judgment on all of the plaintiff's claims.[1] For the reasons

that follow, the defendants' motion is granted.

## BACKGROUND

### 1.    Facts[2]

At around 7:00 p.m. on December 14, 2014, the plaintiff was walking near Flushing High

School when he encountered 16-year-old Lisa Rivera and her boyfriend Joseph Cruz walking

---

[1] On July 20, 2017, the Court granted in part the defendants' motion to dismiss, and as a result, defendants Commissioner Bratton, Captain Conforti, Lieutenant Oh, Officer Soo-Hoo and Detective Yam were terminated from the case. (ECF No. 36; February 27, 2018 Minute Entry.) The remaining defendants, Lisa Rivera, Joseph Cruz, Patricia Rivera and Keyvan Londen, have not appeared in this case.

[2] Unless otherwise noted, the factual background is based on my review of the entire record, including the

their dogs. (Plaintiff's Amended Rule 56.1 Counter-Statement, ECF No. 81 ("Pl.'s 56.1") ¶¶ 2-5, 14.) The plaintiff, who is nearly blind, did not see one of the dogs and inadvertently walked into the dog's leash. (Pl.'s 56.1 ¶ 6.)[3]

The dog started barking, and Mr. Cruz yelled at the plaintiff. (Pl.'s 56.1 ¶ 7.) The plaintiff spoke very little English, but tried to apologize; he explained that his eyesight was not good, and showed Ms. Rivera and Mr. Cruz his eyedrops. (Pl.'s 56.1 ¶¶ 8, 73; Deposition of Qing You Li, ECF No. 80-4 ("Pl. Dep.") 4:22-5:20.)

It is undisputed that at some point Mr. Cruz punched the plaintiff and Ms. Rivera bit the plaintiff's hand. (Pl.'s 56.1 ¶ 9; Pl. Dep. 29:14-23.) The plaintiff also does not deny that he might have hit Ms. Rivera. (Pl. Dep. 54:4-6 ("I guess when she bit me, what happened was I was moving my hands, so I guess it might have hit her at some point.")) Ms. Rivera's mother, Patricia Rivera, arrived and called 911. (Pl.'s 56.1 ¶¶ 11-14.) Officers Waldon and Porzelt heard the radio report of an assault in progress and arrived shortly thereafter. (Pl.'s 56.1 ¶ 15.)

Officer Waldon saw the plaintiff standing over Mr. Cruz, punching him with a closed fist. (Deposition of Brittany Waldon, ECF No. 80-5 ("Waldon Dep.") 13:22-14:5, 16:16-20.) The officers separated the men, and Ms. Rivera told Officer Porzelt that the plaintiff kicked their dog and punched Ms. Rivera in the face. (April 14, 2015 *Dunaway* Hearing Transcript, Queens Criminal Court, ECF No. 80-13 ("Porzelt Testimony") 7:24-8:8.)[4] Both officers noticed injuries

---

parties' 56.1 statements. I construe the facts in the light most favorable to the plaintiff, the non-moving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).

[3] The plaintiff has a history of glaucoma, which caused him to lose approximately 95% of his vision prior to this incident. (Pl.'s 56.1 ¶ 65.)

[4] Officer Porzelt testified at a *Huntley/Dunaway* hearing on the plaintiff's motion to suppress the statements he made to the police. The Honorable Cesar Quinones denied the motion, finding that the officer testified credibly, that the arrest was supported by probable cause, and that the plaintiff's statements were admissible.

to Ms. Rivera's face (Waldon Dep. 20:2-21; Porzelt Testimony 8:20-23), and Officer Waldon noticed a cut on Mr. Cruz's eye (Waldon Dep. 20:2-5).

There is some dispute about the nature of the conversation among the plaintiff and the officers, and whether the plaintiff spoke English or understood what was said. The plaintiff testified that the officers asked him what happened and he responded in broken English. (Pl. Dep. 36:17-37:21.) The plaintiff said that he could not give a complete explanation, but said that he "was walking" and "touched the dog." (Pl. Dep. 37:3-21.) He used gestures in an effort to communicate that Mr. Cruz punched him. (*Id.*) The plaintiff also said, in English, that his eyesight was not good, and he showed the officers his eye drops, which he then used. (Pl. Dep. 19:23-20:1, 38:2-6.) The officers patted the plaintiff's outer clothing, but did not take anything from the plaintiff at that point. (Pl. Dep. 38:9-39:7.)

Officer Waldon testified at her deposition that the plaintiff told her that "he kicked their dog. The dog screamed. I accidentally punched the female in the face, and then the boyfriend came and punched me. I then punched him back in self defense." (Waldon Dep. 17:19-24.) Officer Porzelt said that the plaintiff told him a similar version of the events, and said that Ms. Rivera and Mr. Cruz attacked him. (*See* Porzelt Testimony 9:19-25.) Officer Waldon saw that there were abrasions on the plaintiff's wrist and knuckles, and Officer Porzelt saw injuries on the plaintiff's shoulder and hands. (Waldon Dep. 20:2-8, Porzelt Testimony 10:1-4.) Officer Porzelt also interviewed an eyewitness, Keyvan Londen, who said that he saw the plaintiff assault Ms. Rivera and Mr. Cruz. (Porzelt Testimony 9:1-15, 11:1-3.)

Emergency medical technicians arrived and examined the plaintiff, Ms. Rivera and Mr. Cruz. (Pl.'s 56.1 ¶ 33.) The plaintiff testified that the EMTs looked at his wounds, and that he showed them his eyes, teeth, knees and hands. (Pl.'s 56.1 ¶ 42; Pl. Dep. 40:15-18, 43:3-25.) The

plaintiff also told them that he was in pain, but he did not ask to go to the hospital. (Pl. Dep. 47:17-48:9.) The EMTs wrapped the plaintiff's hand. (Pl.'s 56.1 ¶ 45.)

The parties disagree about whether Officer Waldon asked if the plaintiff needed an interpreter. (*See* Pl. Dep. 72:11-14, 74:1-6; Waldon Dep. 33:6-19.) Officer Waldon said that the plaintiff refused her offer to make a request for an interpreter. (Waldon Dep. 33:7-10.) The plaintiff said he was not "provided interpretation" by the officers, and that he used his cell phone to call his sister and brother-in-law, who spoke both Mandarin and English, to interpret for him. (Pl. Dep. 38:18-19, 40:19-23, 45:1-46:7, 47:10-16, 49:8-15, 72:10-14, 74:1-6.) The sister and brother-in-law arrived at some point before the plaintiff was arrested, but the plaintiff said that they did not have the opportunity to explain the plaintiff's version of the events to the officers before they arrested the plaintiff. (Pl. Dep. 45:1-46:7, 47:10-16.) The plaintiff said that his brother-in-law asked the officers why they were arresting the plaintiff and told them that the plaintiff was "a good man, don't arrest him... [h]e can't see anything, you can't arrest him." (*See* Pl. Dep. 46:2-5, 49:12-23.)

At some point after the plaintiff spoke with Officer Porzelt, Sergeant Frabizio arrived. (Pl.'s 56.1 ¶¶ 35-37.) The officers formally arrested the plaintiff; they searched him, took his cell phone, and handcuffed him. (Pl. Dep. 46:8-16; Waldon Dep. 28:11-20.)[5] The officers then took the plaintiff to the precinct, and put him in a holding cell. (Pl.'s 56.1 ¶¶ 51, 52.) The plaintiff was released after about two or three hours. (Pl.'s 56.1 ¶ 54.)[6] The plaintiff saw a doctor the next day; the doctor examined the plaintiff, wrapped his hand, gave him a tetanus

---

[5] The plaintiff now claims that the police took his cellphone before he was arrested (*see* Pl.'s 56.1 ¶ 50; ECF No. 78 at 15-18), but the factual record, including the plaintiff's deposition, is clear that the officers took the cellphone after the arrest (*see* Pl. Dep. 45:1-46:16; Waldon Dep. 28:11-20).

[6] The plaintiff testified that he agreed to an adjournment in contemplation of dismissal. (Pl. Dep. 54:11-55:12.)

shot, and told him to use topical cream for his hand. (Pl.'s 56.1 ¶¶ 56, 58-60; Hospital Records, ECF No. 80-11 at 66.) The plaintiff also went to a hospital. According to the hospital notes, there was "no indication for emergency intervention at this time." (Pl.'s 56.1 ¶¶ 61-64; Hospital Records, ECF No. 80-10 at 8.) On May 4, 2015, the plaintiff's doctor examined him again. (Pl.'s 56.1 ¶¶ 66-67; ECF No. 80-22 at 68.) At that appointment, the plaintiff denied that his vision had changed significantly, and the doctor did not find any significant changes in the plaintiff's vision. (Pl.'s 56.1 ¶¶ 66-67; ECF No. 80-22 at 68.)

## 2. **Procedural History**

The plaintiff filed his complaint on January 13, 2016, asserting federal civil rights claims pursuant to 42 U.S.C. § 1983, federal statutory violations of the Age Discrimination Act of 1975, the Americans with Disabilities Act, and Title VI of the Civil Rights Act, and state law claims for false arrest and imprisonment, assault, battery, abuse of process, deprivation of the right to petition the government and violations of the equal protection clause. (ECF No. 1.) On July 20, 2017, I granted the defendants' motion to dismiss the plaintiff's claims under Title VI, the Americans with Disabilities Act, the Age Discrimination Act, and the equal protection clauses of the United States Constitution and the New York State Constitution. (ECF No. 36.) I denied the defendants' motion to dismiss the plaintiff's claims for deliberate indifference to his medical needs. I also denied the motion to dismiss the plaintiff's right to petition claims, but found that the plaintiff had alleged a cause of action only with respect to the circumstances of his arrest. (*Id.*)

On October 9, 2018, the City defendants moved for summary judgment on the remainder of the plaintiff's claims: deprivation of the plaintiff's right to petition the government pursuant to 42 U.S.C. § 1983, the First Amendment, and the New York Constitution; unreasonable search

and seizure pursuant to § 1983 and the Fourth Amendment; and deliberate indifference to medical needs pursuant to § 1983 and the Eighth Amendment. (ECF No. 74.)

## LEGAL STANDARD

Summary judgment is appropriate only if the parties' submissions, including deposition transcripts, affidavits, or other documentation, show that there is "no genuine dispute as to any material fact," and the movant is "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The movant has the "burden of showing the absence of any genuine dispute as to a material fact." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997); *Tsesarskaya v. City of New York*, 843 F. Supp. 2d 446, 453–54 (S.D.N.Y. 2012) ("While disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment[,] [f]actual disputes that are irrelevant or unnecessary will not be counted.") (quoting *Anderson*, 477 U.S. at 248). "Once the moving party has met this burden, the party opposing summary judgment must identify specific facts and affirmative evidence that contradict those offered by the moving party to demonstrate that there is a genuine issue for trial." *Ethelberth v. Choice Sec. Co.*, 91 F. Supp. 3d 339, 349 (E.D.N.Y. 2015) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). The non-moving party "may not rely on mere conclusory allegations nor speculation, but instead must offer some hard evidence showing that its version of the events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). In deciding whether summary judgment is appropriate, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010); *Salamon v. Our Lady of Victory Hosp.*, 514 F.3d 217, 226 (2d Cir. 2008).

6

Because the defendants are moving for summary judgment, I draw all reasonable inferences in the plaintiff's favor.

## DISCUSSION

The defendants argue that there is no constitutional right to an interpreter during an arrest, that the officers searched the plaintiff incident to a valid arrest supported by probable cause, and that the officers were not indifferent to the plaintiff's medical needs.

### A. Right to Petition Claims

The First Amendment guarantees "the right of the people ... to petition the Government for a redress of grievances." "The right to petition is cut from the same cloth as the other guarantees of that Amendment," and is analyzed in the same manner as the right to free speech. *McDonald v. Smith*, 472 U.S. 479, 482, 485 (1985). While "the contours of this right are unclear, it includes the right of access to the courts and arguably extends to other forms of redress such as the right to lodge complaints with the police." *Anderson v. City of New York*, No. 99-cv-418, 2000 WL 1010984, at *4 (E.D.N.Y. July 19, 2000) (citing *McDonald*, 472 U.S. at 482-3).

The plaintiff argues that the defendants denied him the right to petition because they did not get him an interpreter, which in turn meant that he could not give the defendants his side of the story.[7] The defendants respond that there is no constitutional right to an interpreter during an arrest. I agree. Police officers have no affirmative duty to provide interpretation services immediately upon arrest or detention under the First Amendment, "[n]or is there any other source for such federal right under § 1983." *Meng Meng Lin v. City of New York*, No. 16-cv-

---

[7] The plaintiff also argues that the officers violated the NYPD Language Access Plan. The Language Access Plan is an internal policy of the police department and does not confer the right to an interpreter during an arrest, nor is there a private right of action to enforce any part of the plan.

2270, 2018 WL 4119207, at *6 (E.D.N.Y. Aug. 29, 2018) (citing *Arum v. Miller*, 331 F. Supp.

2d 99, 111–12 (E.D.N.Y. 2004) ("no federally protected right provides for the provision of an

interpreter" during arrest)).[8]

Since free speech claims under the First Amendment and the New York State

Constitution are subject to the same standards, the same analysis applies to both of the plaintiff's

claims. *Hous. Works, Inc. v. Turner*, 179 F. Supp. 2d 177, 199 n.25 (S.D.N.Y. 2001), *aff'd sub*

*nom. Hous. Works, Inc. v. Guiliani*, 56 F. App'x 530 (2d Cir. 2003) (internal citations omitted).

Summary judgment is therefore granted on the plaintiff's right to petition claims pursuant to

42 U.S.C. § 1983, the First Amendment,[9] and the New York Constitution.[10]

## B. Unreasonable Search and Seizure

Under the "search incident to arrest" exception to the Fourth Amendment's warrant

requirement, a search incident to an arrest based on probable cause "is a reasonable intrusion

under the Fourth Amendment" and "requires no additional justification." *United States v. Koron*,

101 F.3d 682, at *2 (2d Cir. 1996) (quoting *Illinois v. Lafayette*, 462 U.S. 640, 645 (1983)). As

---

[8] The defendants cited *Meng Meng Lin* for the first time in a November 2, 2018 letter. (ECF No. 76.) The plaintiff argues that I should not consider the case, characterizing the letter as a "supplemental motion." (ECF No. 78 at 9-10.) The fact that the defendants did not cite *Meng Meng Lin* in their brief does not mean that I should ignore the case. The plaintiff's counsel was also counsel to Meng Meng Lin, knew of the decision, and arguably should have drawn the Court's attention to it. In any event, *Meng Meng Lin* is one of the only cases in the Second Circuit that involves a claim like the plaintiff's, and I would have found and cited the case regardless of the defendants' letter.

[9] The defendants argue in a footnote that they are entitled to qualified immunity on the plaintiff's right to petition claims. Because there is no clearly established right to an interpreter during an arrest, there is no reason to reach the qualified immunity issue. *See Abrams v. Dep't of Pub. Safety*, 764 F.3d 244, 255 (2d Cir. 2014) (A "[g]overnment official's conduct violates clearly established law when, at the time of the challenged conduct, the contours of a right are sufficiently clear that every reasonable official would have understood that what he is doing violates that right.").

[10] Because the plaintiff's constitutional rights were not violated, there is no plausible *Monnell* claim against the City of New York. *See Charles v. City of Nassau*, No. 11-cv-2709, 2015 WL 10457215, at *7–9 (E.D.N.Y. Feb. 20, 2015), *report and recommendation adopted*, 116 F. Supp. 3d 107 (E.D.N.Y. 2015) (granting summary judgment because plaintiff failed to show link between municipal policy and constitutional deprivation); *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 690–91 (1978).

long as a police officer has probable cause to arrest a suspect, a search incident to the arrest will be valid even if the officer initially did not plan to arrest the suspect. *Koron,* 101 F.3d at *2 (citing *United States v. Ricard,* 563 F.2d 45, 49 (2d Cir. 1977)); *Evans v. Solomon,* 681 F. Supp. 2d 233, 248 (E.D.N.Y. 2010) ("An arrest pursuant even to a simple traffic violation permits a search incident to arrest.").

Probable cause requires an officer to have "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." *Panetta v. Crowley,* 460 F.3d 388, 395 (2d Cir. 2006) (quoting *Martinez v. Simonetti,* 202 F.3d 625, 634 (2d Cir. 2000). Probable cause does not require that an officer have absolute certainty that a suspect is guilty; the reviewing court must "consider those facts available to the officer at the time of the arrest and immediately before it." *Caldarola v. Calabrese,* 298 F.3d 156, 162 (2d Cir. 2002). A police officer has probable cause to arrest if she receives confirmation "from some person, normally the putative victim or eyewitness... unless the circumstances raise doubt as to the person's veracity." *Panetta,* 460 F.3d at 395 (internal citations omitted). Police officers are also "entitled to rely on the allegations of fellow police officers" in deciding whether they have probable cause to arrest. *Martinez,* 202 F.3d at 634. An officer's failure to investigate an arrestee's protestations of innocence generally does not vitiate probable cause. *Panetta,* 460 F.3d at 396; *United States v. Fama,* 758 F.2d 834, 838 (2d Cir. 1985) ("The fact that an innocent explanation may be consistent with the facts alleged ... does not negate probable cause.").

The officers had probable cause to arrest the plaintiff. When they arrived on the scene, Officer Waldon saw the plaintiff standing over Mr. Cruz, punching him. The officers also saw that both Ms. Rivera and Mr. Cruz had injuries to their faces, Ms. Rivera said that the plaintiff hit

her, and an eyewitness told them that the plaintiff punched Ms. Rivera in the face. This information alone established probable cause. *See Curley v. Village of Suffern,* 268 F.3d 65, 70 (2d Cir. 2001) (arrest valid where visibly injured assault victim told officer that Curley assaulted him, despite Curley's conflicting account). The fact the plaintiff was also injured and explained that he was not the aggressor does not change the analysis; the officers were "not required to explore and eliminate every theoretically plausible claim of innocence before making an arrest." *See id.* at 70 (quoting *Ricciuti v. New York City Transit Auth.,* 124 F.3d 123, 128 (2d Cir. 1997)).

Once the officers had probable cause to arrest the plaintiff, they were entitled to search him. *See Othman v. City of New York,* No. 13-cv-4771, 2018 WL 1701930, at *14–15 (E.D.N.Y. Mar. 31, 2018). The plaintiff's claim that the officers took his phone before they formally arrested him is irrelevant, since the test is whether the officers had probable cause before they took the phone, not whether they had formally placed him under arrest by handcuffing him. In any event, the plaintiff's claim about the timing of the seizure is inconsistent with his deposition testimony that the officer took his cell phone after she handcuffed him (ECF No. 78 at 15-18; Pl. Dep. 45:1-46:19), and the uncontroverted evidence that he used the phone to call his sister and brother-in-law before his arrest (Pl. Dep. 38:9-7, 40:19-23). In short, because the officers took the plaintiff's cell phone as part of a lawful arrest, summary judgment is appropriate.

### C. Deliberate Indifference to Medical Needs

The plaintiff's claim that he was denied medical care at the time of his arrest is properly analyzed under the Due Process Clause of the Fourteenth Amendment. *See Weyant v. Okst,* 101 F.3d 845, 856 (2d Cir. 1996). To establish a § 1983 claim for deliberate indifference to medical needs, the plaintiff must satisfy two prongs: (1) an objective prong – "that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due

process;" and (2) a subjective prong – "that the officer acted with at least deliberate indifference to the challenged conditions." *Harris v. City of New York*, No. 15-cv-6341, 2018 WL 1997974, at \*4 (E.D.N.Y. Apr. 27, 2018) (quoting *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017).

To establish the objective prong of the test – a sufficiently serious medical condition – the plaintiff must establish "a condition of urgency, one that may produce death, degeneration, or extreme pain." *Vargas v. City of New York*, No. 13-cv-3188, 2017 WL 1214434, at \*11 (E.D.N.Y. Mar. 31, 2017) (internal citations omitted). No reasonable juror would conclude that the plaintiff had an objectively serious medical condition in this case. The record establishes that the plaintiff had superficial injuries to his hands, face, and eyes. The plaintiff maintains that his glaucoma, together with the "aggravation" he suffered, was sufficiently serious to meet the objective prong. However, the plaintiff's glaucoma, while unquestionably serious, was a longstanding condition. The record, viewed in the light most favorable to the plaintiff, does not establish that the glaucoma was exacerbated by his arrest. It is undisputed that the records of the plaintiff's hospital visit the day after his arrest reflect the doctor's conclusion that there was "no indication for emergency intervention at this time." (Pl.'s 56.1 ¶ 63; Hospital Records, ECF No. 80-10 at 8.) Similarly, the plaintiff's doctor, who also saw the plaintiff the next day, treated the plaintiff only for superficial injuries. (*See* Pl.'s 56.1 ¶¶ 56, 58-61, 63; Hospital Records, ECF No. 80-11 at 66.) Six months after the incident, the plaintiff's doctor confirmed there were no significant changes in the plaintiff's vision. (Pl.'s 56.1 ¶¶ 66-67; ECF No. 80-22 at 68.) The plaintiff's other injuries – abrasions to his face and hands – were not sufficiently serious to satisfy the objective prong. *See Goodwin v. Kennedy*, No. 13-cv-1774, 2015 WL 1040663, at \*12 (E.D.N.Y. Mar. 10, 2015) (collecting cases: "Courts in this Circuit have consistently held

that cuts, lacerations, bruises, and other superficial injuries… 'are not sufficiently serious to support' a deliberate indifference claim.").

The plaintiff likewise fails to satisfy the subjective prong because the record is clear that he was not denied access to medical care. "The pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety." *Darnell*, 849 F.3d at 35. The plaintiff told the officers that he had bad vision and needed his eye drops, but asked only to use his eye drops, which he did. Moreover, the plaintiff received medical care before he was arrested. EMTs examined and treated him at the scene, and did not suggest that the plaintiff needed further medical attention. The plaintiff then spent at most three hours at the precinct, and visited his doctor and a hospital the next day. No reasonable juror would conclude from these facts that the defendants intentionally or recklessly deprived the plaintiff of medical care. *See Vargas,* 2017 WL 1214434, at \*12 (granting summary judgment because medical records showed plaintiff did not require immediate medical attention and "no reasonable fact-finder could find that the police were reckless in delaying the trip to the hospital for approximately 25 hours."). The plaintiff has not raised a genuine issue of material fact regarding his claim for deliberate indifference to medical needs, and summary judgment is granted.

### D. Remaining State Law Claims

Because I dismiss all of the plaintiff's federal claims, there remains no independent basis for federal jurisdiction over the remaining state law claims against Lisa Rivera, Joseph Cruz, Patricia Rivera and Keyvan Londen, who have not appeared in this action. *See Kittay v.*

*Giuliani*, 112 F. Supp. 2d 342, 354 (S.D.N.Y. 2000), *aff'd*, 252 F.3d 645 (2d Cir. 2001).  The

pendent New York law claims against these defendants have not been litigated in this Court and

are dismissed.  *See Carnegie–Mellon University v. Cohill*, 484 U.S. 343, 350 (1988) ("when the

federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims

remain, the federal court should decline the exercise of jurisdiction by dismissing the case

without prejudice"); *Baylis v. Marriott Corp.*, 843 F.2d 658, 665 (2d Cir. 1988) ( "[w]hen all

basis for federal jurisdiction have been eliminated from a case so that only pendent state claims

remain, the federal court should ordinarily dismiss the state claims").

## CONCLUSION

The defendants' motion for summary judgment is granted.  The plaintiff's remaining

state law claims against Lisa Rivera, Joseph Cruz, Patricia Rivera and Keyvan Londen are

dismissed because the Court declines jurisdiction over them.


**SO ORDERED.**

s/Ann M. Donnelly
_____
Ann M. Donnelly
United States District Judge

Dated: Brooklyn, New York
         November 28, 2018